IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| SENTRY SELECT INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 08-4254-CV-C-NKL |
| v. | ) ) | |
| JAMES "STAN" HOSMER, JAMES DUCKWORTH AND NANCY DUCKWORTH, | ) ) ) ) ) | |
| Defendants. | | |

**ORDER**

Before the Court are the Motion for Summary Judgment [Doc. # 127] and the Motion for Summary Judgment Based on the Insuring Clause [Doc. # 167] filed by Plaintiff Sentry Select Insurance Company ("Sentry") and the Motion for Partial Summary Judgment [Doc. # 172] and Motion for Summary Judgment [Doc. # 177] filed by Defendants James "Stan" Hosmer, James Duckworth, and Nancy Duckworth. For the following reasons, the Court denies Sentry's motions and grants partial summary judgment for Defendants only with respect to the insuring and exclusion provisions of the insurance policy as well as the Graves Amendment issue.

**I.      Background**

      **A.      The Uncontroverted Facts**

The Court has considered the parties' statements of facts and finds that the following facts are undisputed and supported by evidence. On November 16, 2004, a vehicle collision occurred involving Mark Burleson, who is not a party in this action, and Defendant James Duckworth. At the time of the collision, the vehicle driven by Burleson was a tractor owned by Defendant James "Stan" Hosmer. Hosmer had supplied the vehicle and its driver, Burleson, to CANDS, Inc., which is also not a party in this action. CANDS is the named insured and is alternately referred to as "you" under policy number CT750612-3603-041 issued by Sentry for the period of May 19, 2004 to May 19, 2005 ("the policy").

The policy provided, in relevant part:

SECTION II – LIABILITY COVERAGE

> A. Coverage
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
>
> . . . .
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages . . . . We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.
>
> . . . .
>
> C. Limit Of Insurance
> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages . . . combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

2

[Doc. # 104, Ex. A at 29.] The policy's declarations state that the most that Sentry will pay for any one accident or loss is $1,000,000. *Id.* Hosmer is an insured under the policy.

The policy also contains a contractual liability exclusion which provides, in relevant part:

> B. Exclusions
> This insurance does not apply to any of the following:
> . . . .
> 2. Contractual
> Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages;
>> a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or
>> b. That the "insured" would have in the absence of the contract or agreement.

*Id.* at 31. Furthermore, the policy provides:

> "Insured Contract" means:
>> . . . .
>> 5. That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. . . . .
>> 6. That part of any contract or agreement, entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".
>
> An "insured contract" does not include that part of any contract or agreement:
>> . . . .
>> b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

> c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

*Id.* at 39.

The agreement by which Hosmer leased the tractor to CANDS contains the following hold harmless and indemnity provision:

> **"Hold harmless."** INDEPENDENT CONTRACTOR agrees to defend, indemnify and hold harmless CARRIER from any direct, indirect and consequential loss, damage, fine, expense, including reasonable attorney's fees, action, claim for injury to persons, including death, and damage to property which the CARRIER may occur [sic] rising out of or in connection with INDEPENDENT CONTRACTOR's obligations and or services under this agreement.
>
> It is expressly understood and agreed that INDEPENDENT CONTRACTOR is an independent contractor for the equipment and driver services provided pursuant to this agreement, and that INDEPENDENT CONTRACTOR agrees to defend, indemnify and hold CARRIER harmless for any claims, suits, or actions, including reasonable attorney fees in protecting CARRIERS interest, brought by INDEPENDENT CONTRACTOR, employees, any union, the public, or state or federal agencies, arising out of the operation of the equipment pursuant to this agreement.

[Case No. 2:07-CV-04247, Doc. # 1, Ex. A at 4-5.]

### B. The Two Underlying Actions

The first lawsuit involving the 2004 accident was *Duckworth v. Burleson*, a state case filed in St. Louis. On or about April 26, 2007, the Duckworths entered into a settlement agreement with Burleson pursuant to § 537.065 of the Revised Statutes of Missouri, which allows a claimant and tort-feasor to limit recovery to specified assets or

an insurance contract. The same day, a state court judgment was entered against Burleson, finding that his negligence caused the Duckworths' injuries. The state court assessed damages against Burleson in the amounts of $8,000,000 for damages to James Duckworth and $2,500,000 for damages to Nancy Duckworth. Pursuant to that settlement, Sentry paid out the policy's $1,000,000 limit.

On or about November 30, 2007, the Duckworths filed a second action, *Duckworth v. Hosmer*, this time in the United States District Court for the Western District of Missouri. In that case, the Duckworths alleged that Hosmer had entered into an indemnity contract to indemnify and hold harmless Burleson for damages caused by Burleson's negligent acts as a statutory employee of CANDS. The Duckworths made demand upon Hosmer to pay for the damages assessed against Burleson in *Duckworth v. Burleson*. Sentry was notified of the action but concluded that the policy did not provide coverage because the policy's limit had been paid to settle *Duckworth v. Burleson*.

Following a hearing on the Duckworths' petition for approval of another § 537.065 settlement, judgment in *Duckworth v. Hosmer* was entered on March 16, 2009. This Court's judgment found Hosmer liable to James and Nancy Duckworth on the indemnity agreement in the amount of $8,407,804 for James Duckworth and $2,608,946 for Nancy Duckworth, as well as costs and interest. [Case No. 2:07-cv-04247, Doc. # 29.]

**C.     The Instant Case**

Plaintiff Sentry brought this action seeking a declaration that it had no duty to either defend Hosmer nor indemnify him in *Duckworth v. Hosmer*. [Doc. # 1.] Defendant Hosmer filed a five-count counterclaim against Sentry. [Doc. # 50.]

In Count I, Hosmer alleges Sentry violated its duty of good faith, arising from the insurance contract, by: (1) failing to settle the Duckworths' claims against Hosmer; (2) placing its own interest ahead of its insured in violation of its fiduciary obligations; (3) improperly settling, negotiating, or otherwise handling claims involving multiple insureds to Hosmer's detriment; (4) failing to defend the claim brought against Hosmer; (5) refusing to properly investigate facts regarding Hosmer's potential financial exposure for the Duckworths' injuries and Hosmer's coverage for the accident; (6) taking actions not in Hosmer's best interest; (7) failing to recognize and meet fiduciary duties to Hosmer; (8) refusing coverage for Hosmer's claim without cause and in violation of the Policy; (9) failing to notify Hosmer of the settlement offer in the state court action so Hosmer could take action to protect his financial interests; (10) agreeing to settlements or other agreements to protect Sentry's financial interests or other insureds' interests without protecting Hosmer's interest; (11) failing to hire independent and separate counsel for Hosmer; and (12) exposing Hosmer to excess liability in order to avoid an excess judgment against Burleson. [Doc. # 50 at 8-12.]

In Count II, Hosmer alleges Sentry was negligent in that it: (1) failed to take action in Hosmer's best interest; (2) took action contrary to Hosmer's interest; (3) failed to meet the Duckworths' reasonable demands; (4) failed to properly investigate claims against

Hosmer to determine his liability and financial exposure, as well as coverage; (5) failed to cooperate with the Duckworths to seek a resolution of the claim that would protect Hosmer; (6) failed to pay the full judgment against Hosmer; and (7) failed to notify Hosmer of the settlement offer in the state court action so that he could take action to protect his own financial interest. *Id.* at 14-15.

In Count III, Hosmer alleges Sentry breached its fiduciary duties to him by: (1) failing to take action in his best interest; (2) taking action contrary to his interest; (3) failing to properly investigate the Duckworths' claim against him to determine his liability; (4) failing to meet the Duckworths' reasonable demands; (5) failing to settle the Duckworths' claims for the policy limits when given the opportunity to do so; (6) attempting to settle claims against its insureds for sums less than the reasonable value of the claim; (7) failing to cooperate with the Duckworths to seek a resolution of the claim that would protect Hosmer; (8) failing to pay the full judgment entered against Hosmer; (9) refusing to defend and protect Hosmer and his interest; and (10) failing to notify Hosmer of the settlement offer in the state court action so that he could take action to protect his financial interest. *Id.* at 16-17.

In Count IV of his Counterclaim, Hosmer alleges Sentry breached its insurance contract with him by: (1) failing to defend and protect him; and (2) failing to investigate, negotiate and settle the claims when given the opportunity to do so. *Id.* at 18-19.

Finally, Count V asserts a claim for bad faith punitive damages, alleging that Sentry knew that its conduct would naturally result in damages to Hosmer. *Id.* at 19-21.

On July 17, 2009, the Court granted Sentry's Motion to Dismiss Hosmer's Counterclaim with respect to Count II and Hosmer's claims in Count I related to Sentry's failure to defend Hosmer in *Duckworth v. Burleson* but denied it in all other respects. [Doc. # 64.] With respect to the *Duckworth v. Burleson* action, the Court explained that Hosmer's counterclaim failed to state a claim for bad faith failure to settle because, in that first suit, there were no legal proceedings against Hosmer, no demand by Hosmer that Sentry settle any claim against him, and no offer of settlement with respect to a claim against Hosmer that would have been the subject of a refusal to settle in bad faith by Sentry. *Id.* at 14.

However, with respect to Hosmer's claim that Sentry acted in bad faith in failing to defend him and failing to settle claims against him in *Duckworth v. Hosmer*, Sentry's argument that it had already paid the policy limit of $1,000,000 was insufficient because the reasonableness and good faith of the settlement in the earlier *Burleson* case is a fact-intensive issue, not appropriate for resolution on a motion to dismiss. The Court explained that if Sentry's settlement of the claims against Burleson in *Duckworth v. Burleson* was a reasonable, good faith settlement, then the exhaustion of the policy limits in settlement of that case terminated its duties to Hosmer under the policy. *Id.* at 11.

In its Amended Answer to Hosmer's Counterclaims, Sentry asserts the affirmative defense that the settlement between the Duckworths and Hosmer in the second suit was unenforceable because it was unreasonable and based on collusion. [Doc. # 135, ¶ 124.] According to Sentry, when entering into his agreement with the Duckworths, Hosmer had

8

no liability under the Graves Amendment, 49 U.S.C. § 30106, and, thus, was not a tortfeasor against whom a valid claim could have been made. *Id.* By this theory, even if the bad faith or unreasonableness of the *Burleson* settlement undermined its position that it had no duty to represent Hosmer in *Duckworth v. Hosmer* because the policy limit had been paid, the unreasonable or collusive settlement in that second action rendered the ensuing judgment unenforceable against Sentry.

## II.   Discussion

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a district court must look at the record and any inferences to be drawn from it in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not proper if the evidence

9

is such that a reasonable fact-finder could return a verdict for the non-moving party. *Id.* at 248.

The following issues of law have been raised in these motions for summary judgment: (1) whether the insurance policy covered Hosmer for the damages arising from *Duckworth v. Hosmer*; and (2) whether Sentry has produced sufficient evidence to maintain its affirmative defense of collusion. Neither party has moved for summary judgment on the factual question of whether the settlement of the *Burleson* case was reasonable and in good faith, such that the policy limit was exhausted.

### A. Whether the Insurance Policy Covered Hosmer

Sentry makes three arguments why Hosmer – though an "insured" – is not covered by the insurance policy, as a matter of law, with respect to the Duckworths' suit against him. First, Sentry argues that the insuring clause does not extend coverage to Hosmer. In addition, Sentry argues that the policy excludes Hosmer's contractual liability for indemnification and that no tort liability has been established to qualify for the exception to that exclusion. Finally, Sentry argues that even if respondeat superior liability would have occurred in the absence of Hosmer's indemnity agreement with CANDS, the Graves Amendment precludes such liability here.

#### 1. The Insuring Clause

Sentry's primary argument is that Hosmer was not covered by the insuring clause with respect to the Duckworths' suit against him. [Doc. # 168 at 8.] The relevant language in the policy is as follows:

A. Coverage
We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

Sentry notes that in *Duckworth v. Hosmer*, this Court's judgment found Hosmer liable to James and Nancy Duckworth on the indemnity agreement. [Case No. 2:07-cv-04247, Doc. # 29.] Sentry argues that because that judgment was based on contractual liability, those damages are not sums that Hosmer legally must pay because of bodily injury or property damage caused by an accident and resulting from the ownership, maintenance or use of a covered auto. Sentry does not argue that the auto was not covered or that Hosmer was not an insured. Rather, Sentry contends that the underlying accident in which Burleson injured Duckworth did not cause the damages that Hosmer now must pay.

Sentry's highly technical and restrictive interpretation must fail. As the Missouri Supreme Court stated last year, it is a principle long followed in Missouri that any ambiguity must be construed against the insurer. *Burns v. Smith*, 303 S.W.3d 505, 511 (Mo. 2010) (en banc) (citation omitted). This is in keeping with Missouri's policy not to use technical meanings of the policy's terms, nor a restricted meaning acquired in legal usage. *Id.* (citation omitted). "[A]n insurance policy, being a contract designated to furnish protection, will, if reasonably possible, be construed so as to accomplish that object and not to defeat it." *Id.* at 512 (citation omitted).

11

Here, the most natural reading of the insurance clause covers Hosmer. Sentry's insuring clause includes three causation requirements for the damages the insured legally must pay: (1) *because of* bodily injury or property damage to which this insurance applies, (2) *caused by* an accident and (3) *resulting from* the ownership, maintenance or use of a covered auto. Causation is a difficult concept, yet Sentry's insuring clause makes no attempt to limit the scope of causation with respect to these three requirements. For example, the insuring clause does not attempt to limit the type of claims from which the damages can arise. In fact, as discussed below, the policy's exclusion provisions explicitly envision contractual liability.

The damages that Hosmer legally must pay were caused by the injury to Duckworth, caused by the accident with Burleson and resulted from the use of a covered auto. The Court declines to add language to the insurance contract that would artificially break the chain of causation due to the legal form of liability giving rise to the damages. At best, the clause is ambiguous and will, therefore, be construed in favor of the insured.

### 2. The Contractual Liability Exclusion

Although Plaintiff Sentry admits that Hosmer was an "insured" under its policy with CANDS, it argues that the only basis for the Duckworths' suit was the indemnity provision in the lease agreement, which is subject to the policy's contractual liability exclusion. [Doc. # 128 at 8.]

The relevant policy provision states:

B. Exclusions

This insurance does not apply to any of the following:

. . . .

2. Contractual

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages;

    a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

    b. That the "insured" would have in the absence of the contract or agreement.

[Doc. # 104, Ex. A at 31.]

### a. Whether Hosmer's Liability was Assumed in an "insured contract"

The term "insured contract" is defined by the insurance policy.

An "insured contract" does not include that part of any contract or agreement:

. . . .

    b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

    c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

*Id.* at 39.

It is undisputed that Hosmer supplied the vehicle and its driver, Burleson, to CANDS, Inc. [Doc. # 189 at 5-6.] Therefore, the indemnity provision in the lease agreement pertaining to the rental of Hosmer's auto and driver to CANDS is explicitly excluded from the definition of an "insured contract." Since the lease agreement is not an "insured contract," it is excluded from coverage under ¶ B.2.a. of the policy.

13

### b. Whether Hosmer is Excluded from Coverage Despite the Alternative Respondeat Superior Theory of Liability

However, Defendants Hosmer and the Duckworths argue that ¶ B.2.b. of the policy does apply because Hosmer would have been liable under a respondeat superior theory, even in the absence of his indemnity contract with CANDS. Therefore, according to the Defendants, ¶ B.2.b. makes the contract exclusion provision inapplicable. Plaintiff Sentry responds that Hosmer was alleged and found to be liable in *Duckworth v. Hosmer* solely based on an indemnity agreement, not based on respondeat superior. [Doc. # 170 at 16.] Therefore, the exception to the contractual exclusion, ¶ B.2.b., does not apply because any liability based on respondeat superior is purely hypothetical. In fact, Sentry claims that "Defendants' new allegation that Hosmer had vicarious liability for the underlying accident is not only inconsistent with all previous pleadings; it is irrelevant." *Id.* Yet Sentry fails to show any such inconsistency, and the issue of Hosmer's liability in the absence of the indemnity agreement is clearly made relevant by Sentry's argument that Hosmer was excluded under the insurance contract exclusion which states: "this exclusion does not apply to liability for damages . . . [t]hat the 'insured' would have in the absence of the contract or agreement." [Doc. # 104, Ex. A at 31.] Sentry authored this insurance contract, which can at least reasonably be interpreted to pose the counterfactual question of whether Hosmer would have been liable for the injuries caused by the accident if he had never agreed to assume such liability by contract.

Rather than produce evidence to refute the respondeat superior theory upon which its contract exclusion depends, Sentry admits the statement that Burleson was negligent in the operation of the tractor trailer, subject to the objection that it is not bound by the factual findings in *Duckworth v. Hosmer*. While it is not bound by the facts in *Duckworth v. Hosmer*, it did have a responsibility to contest any fact in Defendants' Statement of Facts that it disagreed with. Instead, it admitted that Burleson was negligent and, therefore, Sentry has conceded the issue. [Doc. # 186 at 8-9.] Sentry also fails to adduce evidence from which a reasonable factfinder could conclude that Burleson did not act within the scope of his agency for Hosmer. Hosmer's affidavit alleges the following facts, which have not been controverted by evidence:

> I [Hosmer] dispatched the drivers, including Mark A. Burleson and assumed full control and responsibility for all hours scheduled. . . . I paid Mr. Burleson for his services as the driver of my truck during the time said truck was leased to CANDS, Inc., pursuant to the Independent Contractor Agreement. . . . I was responsible for supervising Mark A. Burleson. I had the sole responsibility not only for hiring Mr. Burleson, but was also the only person that could fire or terminate the employment of Mr. Burleson.

[Doc. # 178, Ex. 3.] These factual allegations are confirmed by the independent contractor agreement itself. [Doc. # 178, Ex. 5.] Although Defendants admit that CANDS was Burleson's statutory employer, the common law respondeat superior liability is not eliminated merely because federal regulations impose additional duties on the carrier. *Grinnell Mut. Reinsurance Co. v. Empire Fire & Marine Ins. Co.*, 722 F.2d 1400, 1405 (8th Cir. 1983).

15

Defendants have satisfied their burden in moving for summary judgment with respect to the question of coverage exclusion. Therefore, Rule 56(e) requires Sentry to respond by submitting evidentiary materials that designate specific facts showing that there is a genuine issue for trial. Sentry has failed to do so. Based on this record, a reasonable factfinder could not conclude that Hosmer would not have been subject to liability under a respondeat superior theory in the absence of his indemnity agreement with CANDS.

### c. Whether the Graves Amendment Precludes Respondeat Superior Liability for Owners of Vehicles

Sentry also argues that under the Graves Amendment, as the owner of the leased vehicle, Hosmer cannot be held liable for Burleson's accident. [Doc. # 186 at 4.] Sentry cites the following statutory language:

> An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if--
> (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
> (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106(a). Sentry apparently interprets this 2005 federal statute as precluding all liability for all renters and lessors of motor vehicles.

By the plain meaning of its text, the Graves Amendment precludes only liability by reason of being the owner of the vehicle. It does not preclude liability by reason of being

16

an employer. Although there is little caselaw interpreting this statute, a New York Supreme Court slip opinion confirms this reading: "vicarious liability is not abrogated where injury or damage results from the negligence of the owner's employee in the operation or maintenance of the vehicle, nor it seems where the owner was negligent in entrusting the vehicle to the operator." *Luma v. ELRAC, Inc.*, 19 Misc. 3d 1138(A), *2 (N.Y. Sup. Ct. 2008) (citations omitted). In contrast, Sentry's interpretation of the Graves Amendment is lacking in support from the caselaw.

Even if there were any ambiguity in its text, the purpose of the Graves Amendment was to preempt state law vicarious liability for car rental and leasing companies based solely on ownership of the rented vehicle. *See*, *e.g.*, *Vanguard Car Rental U.S.A., Inc. v. Huchon*, 532 F.Supp.2d 1371, 1376 (S.D. Fl. 2007). As Missouri's Congressman Sam Graves explained in the Congressional Record:

> By reforming vicarious liability to establish a national standard that all but a small handful of States already follow, we will restore fair competition to the car and truck renting and leasing industry and lower costs and increase choices for all consumers.
>
> Currently, a small number of States impose vicarious liability or limitless liability without fault, on companies and their affiliates simply because they own a vehicle involved in an accident. Whether or not the vehicle was at fault is completely irrelevant in these situations.

[Doc. # 178, Ex. 11.]

Here, if Hosmer had not been liable under the indemnity agreement, his liability would have been based not on his ownership of the vehicle, but rather on the acts of his

agent and employee. Therefore, the Graves Amendment would not preclude Hosmer's liability for Burleson's accident.

For the reasons stated above, the Court grants partial summary judgment in favor of Defendants with respect to the issue of the exclusion provision. Because the policy can reasonably be read to cover Hosmer and not to exclude him, under Missouri law the Court must construe it liberally in favor of the insured.

**B.     Sentry's Affirmative Defense of Unenforceability**

Defendants Hosmer and the Duckworths also move for summary judgment with respect to Plaintiff Sentry's affirmative defense that the settlement agreement between Duckworth and Hosmer is unreasonable and based on collusion. [Doc. # 178 at 20.] Sentry argues that this affirmative defense raises genuine issues of material fact, thereby precluding summary judgment in favor of Defendants on that issue." [Doc. # 186 at 45.]

Under Missouri law, "[a] § 537.065 settlement must be reasonable and free from fraud and collusion." *Vaughan v. United Fire & Cas. Co.*, 90 S.W.3d 220, 223 (Mo. Ct. App. 2002) (citation omitted). Missouri courts define collusion as a secret concert of action between two or more for the promotion of some fraudulent purpose. *Id.* at 225 (citation omitted).

As the Court has already explained in the context of the *Burleson* settlement, the reasonableness of a settlement is a fact-intensive inquiry. Therefore, the reasonableness of the § 537.065 settlement between Hosmer and Duckworth is a question of fact for the jury. The Court rejects Defendants' argument that the Hosmer settlement agreement is

reasonable as a matter of law because the *Burleson* judgment was also for $10 million and Sentry controlled the *Burleson* litigation.  Because the reasonableness of the *Burleson* settlement remains a disputed issue of fact, the Defendants' argument is not persuasive. Further, the reasonableness of any settlement agreement depends on context, not just the amount of the settlement.  Therefore, the Court denies summary judgment on this affirmative defense.  The Court does not address the submissibility of this affirmative defense on the theory of collusion; it is unnecessary to do so given that the affirmative defense is submissible on the alternative theory of unreasonableness.  Jury instructions on the affirmative defense will be resolved at trial.

## III. Conclusion

Accordingly, it is hereby ORDERED that Sentry's motions for summary judgment [Docs. # 127, 167] are DENIED.  Defendants' motions for summary judgment [Docs. # 172 and 177] are granted in part, only with respect to the insuring and exclusion provisions of the insurance contract as well as the Graves Amendment issue.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  February 4, 2011
Jefferson City, Missouri

19